IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Little Tom Childress, Jr., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:17-2529-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Rebecca Roberts, Babbie M. Jaco, | ) | |
| and Boyd Management LTD, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Little Tom Childress, Jr. ("Childress"), proceeding pro se, alleges a hostile housing environment claim in violation of § 804 *et seq.* of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a) *et seq.* (Compl., generally, ECF No. 1.) The remaining defendants in the instant action, Rebecca Roberts and Boyd Management LTD ("Defendants"),[2] filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Mot. Summ. J., ECF No. 208.) Magistrate Judge Austin recommends denying the Defendants' motion for summary judgement because a reasonable jury could find

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

[2] Babbie M. Jaco was previously dismissed as a defendant. (Jan. 16, 2019 Order, ECF No. 182.)

1

that Childress was subjected to harassment that was sufficiently severe and pervasive to alter his housing conditions and create an abusive environment. (R&R, generally, ECF No. 242.) For the reasons stated below, the court adopts the magistrate judge's Report and Recommendation and denies the Defendants' motion for summary judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

Childress, an African American male, claims that the Defendants racially discriminated against him, in violation of the FHA, while he was a tenant at West End Manor ("West End"). (Compl. 2-6, ECF No. 1.) West End is an apartment complex located in Union, South Carolina, which is managed by Boyd Management. (Id. at 2, ECF No. 1.) Roberts was West End's on-site manager during the alleged incidents. (Id., ECF No. 1.)

Viewing the facts in the light most favorable to Childress, Roberts allegedly directed racially discriminatory statements and slurs to Childress and his Caucasian co-tenant, Karen Ferguson ("Ferguson"), on multiple occasions in 2015. (Id., generally, ECF No. 1.) Childress alleges that in January 2015, Roberts told him that "colored people need to stick with their own kind" and he "[could not] be outside taking pictures with [his] cellphone[.]" (Resp. Attach. 1 (Supp. Docs. 4), ECF No. 211-1.) Moreover, in February 2015, Roberts allegedly told Childress that he was "scaring the white folk" and that he "[could not] be outside with a cellphone in [his] hand taking pictures." (Id., ECF No. 211-1.) In addition, on August 4, 2015, Childress contends that he and Ferguson met with Roberts to sign a recertification contract, which is required by the federal rent subsidy process. (Id. at 21, ECF No. 211-1; Compl. 3, ECF No. 1; Mem. Supp. Mot. Summ. J. 8, ECF No. 208-1.) At this meeting, Roberts allegedly belittled Childress, told him that "they were going to take back their country from those taking over their country,"

mentioned the Confederate Flag and how it was her and her son's heritage, and referenced Childress' skin color. (Resp. Attach. 1 (Supp. Docs. 21), ECF No. 211-1; Compl. 3, ECF No. 1.)

Further, Childress submits that on October 13, 2015, Roberts retaliated against him, for filing a complaint about Roberts' conduct, by giving him two false violations and threatening to call the police on him. (Compl. 3, ECF No.1) Also on October 13, 2015, Roberts allegedly called Childress a n*****. (Id., ECF No. 1.) Additionally, Childress submits that he was treated differently than Caucasian tenants at West Manor because he was given the two false violations, while two Caucasian tenants were not given violations. (Id. at 3-4, ECF No. 1.) One Caucasian tenant purportedly walked around the apartment complex in his underwear without violation. (Id. at 3, ECF No. 1.) Further, Childress complained about a Caucasian neighbor for disturbing the peace, and the neighbor did not receive any violations. (Id. at 4, ECF No. 1.)

Childress also alleges that Roberts would not provide him with his paperwork and that his recertification contract was fraudulent. (Id., ECF No. 1.) Moreover, Childress claims that Roberts accused him of "authorizing a TV Satellite" for another tenant. (Resp. Attach. 1 (Supp. Docs. 15), ECF No. 211-1.) Childress also submits that Roberts and her mother came to his apartment and were "banging on [his] door[,]" which violated West Manor's policy of providing 24-hour notice. (Id., ECF No. 211-1.) Additionally, Roberts allegedly screamed at Childress to not look at Danny, West Manor's maintenance worker, during a meeting because it was challenging her authority. (Childress Objs. 4, ECF No. 246.) Further, Roberts accused Childress of knocking on his neighbors' doors and passing out papers that directed the neighbors

to report Roberts to corporate management. (Am. Compl. 4, ECF No. 109.)[3] Childress and Ferguson voluntarily terminated their tenancy at West End in November 2015. (Compl. Attach. 3 (HUD Determination 5), ECF No. 1-3.)

Childress filed the instant action on September 20, 2017. (Id., ECF No. 1.) Roberts and Boyd Management filed a motion for summary judgment on May 9, 2019. (Mot. Summ. J., ECF No. 208). On, June 4, 2019, Childress filed a response. (Resp., ECF No. 211.) After receiving one extension of time, the Defendants filed a reply on June 21, 2019. (Reply, ECF No. 217.) On July 19, 2019, after receiving two extensions of time, Childress filed a sur reply. (Sur Reply, ECF No. 233.) The magistrate judge issued a Report and Recommendation on October 23, 2019, recommending that the Defendants' motion for summary judgment be denied. (R&R, ECF No. 242.) Childress filed objections on November 5, 2019, and the Defendants filed objections on November 6, 2019. (Childress Objs., ECF No. 246; Defs. Objs., ECF No. 247.) This matter is now ripe for review.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over

---

[3] With leave of court, Childress filed an amended complaint, which the magistrate judge ordered be read together with the original complaint. (2018 Text Order, ECF No. 110.)

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks and citation omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (internal quotation marks and citation omitted).

### B. Hostile Housing Environment Claim

The Fourth Circuit has not yet addressed whether a plaintiff may recover under a hostile housing environment claim under the FHA. However, the Fourth Circuit has decided numerous hostile work environment claims under Title VII. See, e.g., Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264 (4th Cir. 2015); White v. BFI Waste Servs., LLC, 375 F.3d 288 (4th Cir. 2004). Moreover, the Fourth Circuit has held that Title VII and Title VIII have parallel "anti-discrimination objectives[.]" See Smith v. Town of Clarkton, N.C., 682 F.2d 1055, 1065 (4th Cir. 1982). Additionally, district courts within the Fourth Circuit have recognized hostile housing environment claims under the FHA, or Title VIII. See, e.g., Williams v. Poretsky Mgmt., Inc., 955 F.Supp. 490, 495 (D. Md. 1996) (noting, in part, that "[b]ecause Title VII and

Title VIII share the same purpose–to end bias and prejudice–sexual harassment should be actionable under Title VIII.") (citations omitted).  This claim is also recognized in other circuits.  See, e.g., DiCenso v. Cisneros, 96 F.3d 1004, 1008-09 (7th Cir. 1996); Honce v. Vigil, 1 F.3d 1085, 1088-91 (10th Cir. 1993).  Therefore, the court recognizes Childress' claim as a cause of action for hostile housing environment.

To survive a motion for summary judgment on a hostile environment claim, a plaintiff must demonstrate that a reasonable jury could find that the conduct was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of the plaintiff's tenancy and create an abusive environment; and (4) is imputable to the defendant.  See Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007) (employment context); Williams, 955 F. Supp. at 496 & n.2 (housing context).

### C. Objections

Objections to the Report and Recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

#### 1. Childress' Objections

Childress filed objections to the Report and Recommendation.  (Childress Objs., ECF No. 246.)  Upon review, the court finds that Childress' objections are nonspecific, unrelated to

the dispositive portions of the Report, or merely restate his claims. Accordingly, the court finds that Childress' objections are without merit.

## 2. Defendants' Objections

The Defendants also filed objections to the Report and Recommendation. (Defs. Objs., ECF No. 247.) Upon review, the court finds that some of the Defendants' objections are nonspecific, unrelated to the dispositive portions of the Report, or merely restate their claims. However, the court identified three specific objections. The Defendants object to the magistrate judge (1) considering four alleged incidents of racial discrimination; (2) recommending that a reasonable jury could conclude that the alleged incidents were severe or pervasive; and (3) considering Childress' materials and briefs, which exceeded the page limits set forth in the court's local rules. (Id. at 5-11, ECF No. 247.)

### a. Four Alleged Incidents

First, the Defendants contend that the magistrate judge erred in considering four alleged incidents of racial discrimination because Childress only pled three incidents. (Id. at 5, ECF No. 247.) The magistrate judge noted that, at Childress' deposition, Childress testified that Roberts told him "that color[ed] people ought to be with their own kind" in January 2015. (R&R 3 n.3, ECF No. 242.) However, the magistrate judge noted that, in Childress' response in opposition to the Defendants' motion for summary judgment, Childress had asserted that Roberts made this statement in February 2015. (Id., ECF No. 242.) Thus, viewing the facts in the light most favorable to Childress, the magistrate judge found that Roberts made the statement in both January and February 2015. (Id., ECF No. 242.) The Defendants assert that it is clear that

Childress is only referencing a single incident and that he has a vague memory as to when exactly the alleged incident occurred. (Defs. Objs. 5, ECF No. 247.)

After a thorough review, the court finds that Childress is alleging that Roberts made the statement, "colored people need to stick with their own kind[,]" once. However, Childress has alleged incidents of racial discrimination in both January and February 2015. As previously discussed, Childress details that, in January 2015, Roberts told him that "colored people need to stick with their own kind" and that he "[could not] be outside taking pictures with [his] cellphone[.]" (Resp. Attach. 1 (Supp. Docs. 4), ECF No. 211-1.) In addition, Childress explains that, in February 2015, Roberts allegedly approached Childress "once again" and told him that he was "scaring the white folk" and that he "[could not] be outside with a cellphone in [his] hand taking pictures." (Id., ECF No. 211-1.) Therefore, the court finds that genuine issues of material fact exist with respect to which January and February 2015 incidents can be considered by a jury.

### b. Severe or Pervasive

Second, the Defendants argue that the magistrate judge erred in recommending that Childress' allegations were sufficient to create a jury issue as to the severe or pervasive element of his hostile environment claim. (Defs. Objs. 6, ECF No. 247.)

"The 'severe or pervasive' element has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003).[4] A plaintiff must show that

---

[4] Due to the limited case law on hostile housing environment claims, the court will look to hostile work environment claims for guidance. See, e.g., Fahnbulleh v. GFZ Realty, LLC, 795 F. Supp. 2d 360, 363 (D. Md. 2011) (noting that the court was "[d]rawing upon principles that are well-established in the context of Title VII hostile-environment doctrine" for a FHA hostile housing environment claim).

he "subjectively perceive[d] the environment to be abusive" and that the conduct created "an environment that a reasonable person would find hostile or abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). To determine whether the harassment is objectively severe or pervasive, a court may consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether it unreasonably interferes with a person's tenancy; and (5) any psychological harm. See id. at 23. These relevant factors "may be taken into account, [but] no single factor is required." Id.

While not all of Childress' allegations are based on race, Childress has pled a significant number of race-based incidents. "Viable hostile [] environment claims often involve repeated conduct[,]" and Childress has described repeated conduct that all allegedly occurred in 2015. See Boyer-Liberto, 786 F.3d at 277 (citation omitted). Based on a review of the case law, the court finds that Childress' allegations, and their cumulative effect, create a genuine issue of material fact as to whether the harassment was severe or pervasive. See, e.g., Strothers v. City of Laurel, Md., 895 F.3d 317, 331-32 (4th Cir. 2018) (noting that a reasonable jury could conclude that "the net effect" of an employer altering an African American employee's arrival time, changing the dress code as it applied to the employee, and instituting a policy that forbid the employee from leaving her desk without permission was severe and pervasive); Boyer-Liberto, 786 F.3d at 280 (holding that a reasonable jury could find that a supervisor calling an employee a "porch monkey" twice was severe and pervasive); Glaze-Washington v. Beaufort Cty. Sch. Dist., Civil Action No. 9:14-2819, 2016 WL 1071008, at *1, *5-6 (D.S.C. Mar. 17, 2016) (unpublished) (finding that a reasonable jury could find that harassment was sufficiently severe when a supervisor said he was from the "good olde [sic] boy system" and used the words

9

"n[*****] lover"); Tribble-Toney v. Palmetto Health Baptist Hosp., Case No. 3:15-1070-TLW, 2016 WL 5419419, at *3-4 (D.S.C. Sept. 26, 2016) (unpublished) (finding that a genuine issue of material fact existed as to the severe or pervasive element when, in over four years of employment, an employer forwarded less than 10 emails to an employee that reflected African American stereotypes, the employee overheard the employer referring to former President Obama as a "monkey," the employer commented offensively about interracial couples, and the employer asked the employee why "people so black" get tattoos when you cannot see the tattoos on their skin); Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001) (internal quotation marks omitted) ("Far more than a 'mere offensive utterance,' the word 'n[*****]' is pure anathema to African-Americans.").

### c. Page Limits

Third, the Defendants object to the magistrate judge considering all of Childress' submitted briefs and materials because the submissions exceed the page limits set forth in the court's local rules and Childress never sought leave to exceed the page limits. (Defs. Objs. 11, ECF No. 247.) In light of Childress' pro se status, the court is not restricting its review to only the submissions that comply with the local rules. See Sinclair v. Mobile 360, Inc., Nos. 09-1188, 09-1189, 2011 WL 733180, at *6 (4th Cir. Mar. 3, 2011) (unpublished) ("We impose on pro se litigants . . . less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted); United States v. Cockerill, No. 99-4634, 2000 WL 852608, at *1 n.1 (4th Cir. June 28, 2000) (unpublished) (noting that a pro se litigant exceeded the page limits but still considering the pro se litigant's submissions).

### III. CONCLUSION

In conclusion, after a thorough review of the Report and Recommendation and the record in this case, the court adopts Magistrate Judge Austin's Report and Recommendation and incorporates it herein.

Therefore, it is

**ORDERED** that the Defendants' motion for summary judgment, docket number 208, is denied.

**IT IS SO ORDERED**.

                                                s/Henry M. Herlong, Jr.
                                                Senior United States District Judge

Greenville, South Carolina
December 11, 2019